IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 5, 2001 Session

## THE JOHN LEE COMPANY, INC. v. LAMAR HAYNES, ET AL.

Appeal from the Chancery Court for Davidson County
No. 98-2947-I     Irvin H. Kilcrease, Jr., Chancellor

No. M2000-02407-COA-R3-CV - Filed May 9, 2001

The plaintiff, a manufacturers' representative, filed this action for a declaratory judgment that it is not indebted to the defendant for commissions on sales of tee shirts manufactured by Tee Jays Manufacturing Company and sold to Planet Hollywood, in light of the fact that the defendant's sole participation was to arrange a meeting between buyer and seller. The Chancellor found the plaintiff was liable for the commission under a contract theory. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and D. MICHAEL SWINEY, JJ., joined.

Charles Patrick Flynn and Michael K. Radford, Brentwood, Tennessee, for the appellant, The John Lee Company, Inc.

Lew Conner and Joel T. Galanter, Nashville, Tennessee, for the appellees, Lamar Haynes and James Caden.

### OPINION

#### Pleadings

This litigation commenced as a complaint for a declaratory judgment that the plaintiff is not indebted to the defendants as they claim.

The plaintiff alleged that it employed the defendant Lamar Haynes ("Haynes") in 1995 as a commissioned salesman for the specific purpose of marketing Lynmar cellular telephone batteries. He worked about six months, sold no batteries, and voluntarily terminated his employment. During this six-months period, Haynes arranged for executives of BellSouth Corporation to be entertained at a Planet Hollywood Restaurant in Atlanta.

Before Mr. Haynes was employed, the plaintiff, a manufacturers' representative, had contracted with Tee Jays Manufacturing Company in Alabama ("Tee Jays") to act as its representative. The plaintiff and Haynes discussed the possibility that Planet Hollywood might purchase the tee shirts. Haynes introduced the parties and a presentation was made by Tee Jays and the plaintiff to Planet Hollywood. This occurred in the fall of 1995 and resulted in Planet Hollywood's refusal to do business with Tee Jays.

About a year later, Planet Hollywood employed a new purchasing agent whose most recent employer did business with Tee Jays. Haynes arranged a meeting between the new purchasing agent and representatives of the plaintiff and Tee Jays. Planet Hollywood desired to deal directly with Tee Jays, and thereafter began to purchase goods from Tee Jays.

Although the plaintiff did not participate in the transaction, Tee Jays voluntarily offered to pay a commission to the plaintiff on all sales made to Planet Hollywood.

The plaintiff alleged that such payments were an "act of generosity" and did not represent earned commissions. Because it was aware that Haynes needed the money, the plaintiff alleged that it offered to pay Haynes 40 percent of the net commissions it received from Tee Jays, and for the period July 1997 to August 1998 paid him $104,000.00, essentially as a gratuity.

The plaintiff alleged that after it began these payments to Haynes, it was contacted by the defendant James Caden [Caden] who claimed entitlement to such payments as the assignee of Haynes. The plaintiff claims that it owes the defendants nothing and seeks a declaratory judgment accordingly.

Haynes responded that his agreement with the plaintiff was based on a net commission of 50 percent, rather than 40 percent. He admitted that his employment by the plaintiff was terminated as alleged, but was expressly subject to the continued agreement with the plaintiff concerning the Planet Hollywood sales. Haynes denied the payments to him were gratuitous. He counterclaimed for an accounting, and sought a judgment against the plaintiff for an arrearage based on a commission of 50 percent, together with all future commissions owing.

## **Judgment**

The case was submitted to the Chancellor on cross-motions for summary judgment. The voluminous record notwithstanding, with its hosts of depositions and affidavits, the parties agreed that the material facts were not in controversy. The Chancellor found these relevant facts:

> Haynes is a commercial real estate agent who developed a business relationship with Planet Hollywood and two of its vice-presidents.
>
> In April 1995 The John Lee Company, a manufacturers' representative company, orally contracted with Haynes to pay him 50

percent of any commission for any manufacturer representation accounts he secured. Two months later, Haynes arranged a meeting between a vice-president of Planet Hollywood, Dan Harf, and Mr. Lee, who discussed the possibility of a tee-shirt deal between Planet Hollywood and Tee Jays. Mr. Lee later contacted Terry Wylie, owner of Tee Jays, and secured a manufacture's representative account. At that time, Mr. Lee informed Mr. Wylie that he was working on a deal with Planet Hollywood for the manufacture and sale of tee shirts. Haynes contacted Dan Harf and requested that he help arrange a presentation by Lee and Tee Jays to Planet Hollywood, who, by agent, shortly informed Tee Jays that it would not then pursue a business relationship. For this reason, both Mr. Lee and Mr. Wylie suggested that Haynes continue his efforts to secure future business with Planet Hollywood, who soon requested that Haynes arrange a new presentation by Tee Jays because Planet Hollywood had employed a new vice-president of merchandising. Haynes arranged a meeting for February 20, 1997 between Tee Jays and Ms. Endre, the new vice-president of merchandising. It developed that Ms. Endre preferred to deal directly with Tee Jays and Planet Hollywood entered into an agreement for the manufacture and sale of tee shirts.

Tee Jays paid the plaintiff a 3 percent commission from the proceeds of the Planet Hollywood account in accordance with the original agreement between them.

The plaintiff, in turn, paid Haynes a commission of 40 percent to which he agreed and eventually assigned it to the co-defendant James Caden.

From these facts the Chancellor concluded (1) that the parties orally agreed that Haynes was entitled to a commission if he procured a sale; (2) that Tennessee law is well settled that a broker or agent is entitled to a commission if his efforts were an efficient, procuring cause of the sale, citing *Pacesetter Properties Inc. v. Hardoway*, 635 S.W.2d 382 (Tenn. App. 1996); (3) that if initial efforts to effect a sale fails, a contract will be deemed renewed when the principal has recognized that the broker is continuing negotiations looking to a sale, citing *Pyles v. Cole*, 241 S.W.2d 841 (Tenn. App. 1951); (4) that the contract was renewed, thus entitling Haynes to his commission of $21,596.18 with interest of $3,959.28. All other claims were dismissed.

The plaintiff appeals, and presents for review the issue of whether a presentation meeting with a potential customer entitles a salesman to commissions on sales made to that customer by a third party after the salesman's termination of employment.

The defendant and counter plaintiff, Haynes, presents the same issue in different verbiage, and the issues of whether (1) the appeal is frivolous and (2) whether Haynes is entitled to discretionary costs.

Appellate review is *de novo* on the record with no presumption of correctness since the issue is one of law. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741 (Tenn. 1991).

## Analysis

The thrust of appellant's argument is that the Chancellor found Haynes' only relevant act in furtherance of a business relationship between Planet Hollywood and the plaintiff or Tee Jays Manufacturing Company was the arrangement of a meeting between Tee Jays and Ms. Endre, a vice-president of Planet Hollywood. Despite this, the plaintiff argues, the Chancellor concluded that Haynes was the procuring agent, and thus entitled to his commissions. But the appellant too narrowly draws the parameters of the Chancellor's findings; aside from arranging the referenced meeting, Haynes pursued the matter in other ways. When Planet Hollywood decided against doing business with Tee Jays, the plaintiff suggested to Haynes that he continue to pursue future business with Planet Hollywood. Haynes was later contacted by Planet Hollywood who requested another presentation from Tee Jays. He responded to this request by arranging a meeting between Tee Jays and Ms. Endre, who was in charge of purchasing for Planet Hollywood.

It is not disputed that Mr. Lee advised the owner of Tee Jays that Haynes might be able to get Tee Jays an appointment with Planet Hollywood. It is also not disputed that Tee Jays agreed to pay Lee a 3 percent commission if it got Planet Hollywood's business.

Significantly, when the new purchasing agent for Planet Hollywood assumed her duties, it was Haynes whom she contacted to arrange a second sales meeting between Tee Jays and Planet Hollywood.

The plaintiff paid 50 percent of the commission it received from Tee Jays to Haynes, later reduced to 40 percent by agreement. The only explanation for these payments offered by the plaintiff is that they were a gratuity, and Haynes needed the money.

This record is replete with evidence that the efforts of Haynes were the procuring cause of the sale. He is, therefore, entitled to the commissions. *Pacesetter, supra.* Moreover, it would seem to be fair comment that since the plaintiff paid Haynes monthly commissions on the Tee Jays account for about a year with full knowledge of the facts, it likely did so from contractual constraint.

The Chancellor properly entered summary judgment for the defendants-counter-plaintiffs.

The issue presented by the defendants of whether this appeal is frivolous is without merit. The issue of whether the defendants are entitled to discretionary costs is answered negatively, since no motion was filed seeking such costs. See Rule 54.04(2).

The judgment is affirmed at the costs of the appellant.

_____
WILLIAM H. INMAN, SENIOR JUDGE